IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRYAN STEWART, | |
| **Plaintiffs,** | |
| v. | Case No. 25-mc-00024-SPM |
| C/O MICHAEL JOHNSON, *et al.*, | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court for consideration of a Motion to Quash Subpoenas Issued on May 21, 2025 filed by Respondents Jenna P. Martin and Troy Hempen (Doc. 4) and a Motion Seeking Oral Argument on Her Response to Defendant's Motion to Quash Plaintiff's Subpoenas filed by Plaintiff Bryan Stewart (Doc. 10). Having been fully informed of the issues presented, Respondents' Motion to Quash (Doc. 4) is **GRANTED**. Plaintiff's Motion Seeking Oral Argument (Doc. 10) is **DENIED**.

### FACTUAL BACKGROUND

This matter originates from the Northern District of Illinois, where the underlying dispute is currently pending before Chief District Judge Rebecca R. Pallmeyer. *See Stewart v. Johnson et al.*, Case No. 23-cv-50198 (N.D. Ill). In that case, Plaintiff Bryan Stewart, a transgender inmate currently incarcerated at Big Muddy River Correctional Center in Ina, Illinois, brought claims under 42 U.S.C. § 1983 against the following Defendants: Corrections Officer Michael Johnson, Lt. Gary

Nolan, Lt. Rene Stevens, Lt. Joseph Clark, QMHP Susan Rick, and Dr. Suzner for alleged violations of her rights pursuant to the Eighth and Fourteenth Amendments to the U.S. Constitution. (Doc. 2); *See Stewart*, Case No. 23-cv-50198 (Doc. 5). Defendants Johnson, Nolan, Stevens, Clark, Rick, and Suzner are alleged to have violated Stewart's Eighth and Fourteenth Amendment rights by failing to protect her from a violent sexual assault by another inmate on or around April 23, 2021 while she was incarcerated at Dixon Correctional Center in Dixon, Illinois; Suzner is alleged to have violated Stewart's Eighth and Fourteenth Amendment rights due to deliberate indifference to Stewart's medical care on or about April 23, 2021, following the sexual assault, while she was incarcerated at Dixon Correctional Center. (Doc. 2); *Stewart*, Case No. 23-cv-50198 (Doc. 5).

Stewart filed the instant miscellaneous action in this Court on May 20, 2025, for the purpose of issuing subpoenas to prisons located within the Southern District of Illinois. (*See* Doc. 9, pp. 2−3). At issue in Respondents' instant Motion to Quash are two subpoenas *duces tecum* which request Respondents Troy Hempen (of Centralia Correctional Center) and Jenna Martin (of Big Muddy River Correctional Center) to produce certain documents regarding Stewart and send all requested documents on June 5, 2025, to Gregory E. Kulis & Associates Ltd. in Chicago, which is the firm currently representing Stewart both her Northern District of Illinois case and the present case. (*See* Doc. 4, Ex. A).[1] Respondents Hempen and Martin are neither

---

[1] More specifically, the subpoena issued to Centralia Correctional Center directed to Respondent Hempen seeks Hempen to produce the following: any documents related to any Prison Rape Elimination Act ("PREA") investigations done for B. Stewart regarding any alleged complaints she

parties to the Northern District of Illinois action nor to this action, and the particular nature of their relationship to this litigation is unclear, other than the fact that they are perhaps "agents of Big Muddy and Centralia." (*See id.*, p. 9).

Respondents Hempen and Martin timely filed the instant Motion to Quash on June 5, 2025. (Doc. 4). Plaintiff Stewart filed her operative amended Response on July 15, 2025. (Doc. 9). On July 16, 2025, Plaintiff Stewart requested this Court hold oral argument regarding the Motion and Response. (Doc. 10).

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the procedure for issuing subpoenas. A subpoena must issue from the court where the action is pending and must, in relevant part, command each person to whom it is directed to produce, at a specified time and place, designated documents, electronically stored information ("ESI"), or tangible things in that person's possession, custody, or control. FED. R. CIV. P. 45(a)(1)−(2). As to the place of compliance for a subpoena, a subpoena may command production of documents, ESI, or tangible things at a place within 100 miles

---

raised in December 2024; any documents related to any PREA investigation done for B. Stewart regarding an alleged incident that occurred on December 16, 2024; any documents relate to any disciplinary tickets/history for B. Stewart regarding alleged incidents that occurred in December 2024; any and all emails sent to and from any employees at Centralia Correctional Center that mention Bryan J. Stewart from December 1, 2024 to the date Stewart was transferred from Centralia Correctional Center; and any and all documents related to the transfer of B. Stewart from Centralia to Big Muddy, including any and all documents related to the justification for doing so. (*See* Doc. 4, Ex. A, p. 4).

The subpoena to Respondent Martin seeks Martin to produce the following: any and all documents related to B. Stewart's movement history for the entire month of January 2025; any and all documents from "Inmate 360" program that shows Plaintiff's movement history for the month of January 2025; any and all documents related to any and all times that B. Stewart went to the healthcare area of Big Muddy River Correctional Center for the entire month of January 2025; any and all camera footage that depicts B. Stewart in Healthcare waiting area of Big Muddy River Correctional Center for the entire month of January of 2025; and the names and ID numbers of all African American Inmates who are over the age of 41 who were incarcerated at Big Muddy River Correctional Center on January 12, 2025. (*See id.*, Ex. A, p. 9).

of where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45(c)(2). A party issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena. FED. R. CIV. P. 45(d)(1). More specifically, the Rule provides that a person who is commanded to produce documents, ESI, or tangible things need not appear in person at the place of production unless also commanded to appear for a deposition, hearing, or trial. FED. R. CIV. P. 45(d)(2)(A). A person commanded to produce documents may serve on the party or attorney designated in the subpoena a written objection to inspecting the materials requested. FED. R. CIV. P. 45(d)(2)(B).

Rule 45 also governs the procedure for quashing a subpoena. Upon a timely motion, the court for the district where compliance is required must quash or modify a subpoena that: "fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c), requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." FED. R. CIV. P. 45(d)(3); *see Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 C 5757, 2023 WL 2974083, at *1 (N.D. Ill. Apr. 17, 2023). The moving party must establish the impropriety of the subpoena. *Architectural Iron Workers'*, 2023 WL 2974083, at *1 (citing *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002)).

## ANALYSIS

Respondents Hempen of Centralia Correctional Center and Martin of Big Muddy River Correctional Center move to quash the subpoenas requesting they produce certain documents and ESI because, they argue, Plaintiff Stewart failed to

issue the subpoenas from the Northern District of Illinois where the underlying matter is pending; the subpoenas fall outside of the geographical limits set forth in Federal Rule of Civil Procedure 45(c); and the subpoenas request production of records lacking relevance to Stewart's underlying Eighth and Fourteenth Amendment claims set forth in the underlying litigation. (*See* Doc. 4).

As to their first argument, Respondents Hempen and Martin argue that Rule 45 requires the subpoenas to have issued from the Northern District of Illinois, where this matter is currently pending. (*See id.*, p. 5). This Court agrees. Stewart argues in Response that her counsel "emailed proposed subpoenas from the Northern District of Illinois Western Division directed to Centralia and Big Muddy prisons" to Defendants' counsel to determine whether Defendants would raise an objection. (Doc. 9, pp. 2–3).[2] Stewart states that her counsel conferred with Defendants' counsel by phone and learned that Defendants took the position that the subpoenas could not be enforced by the Northern District of Illinois and the subpoenas violated Rule 45(c)'s 100-mile rule. (*See id.*, p. 3). Acting on this information, Stewart argues, her counsel did not attempt to serve the subpoenas from the Northern District of Illinois and instead opened the instant miscellaneous action in this District for the purpose of issuing subpoenas to Centralia and Big Muddy, as these prisons were located within the Court's purported jurisdiction. (*See id.*). Stewart states that she is "at a loss as to

---

[2] The Court notes that the Illinois Assistant Attorney General representing Defendants Clark, Johnson, Nolan, and Stevens in the underlying litigation in the Northern District of Illinois is the same counsel for Respondents in the present matter. *See Stewart*, Case No. 23-cv-50198 (Doc. 92).

the Respondents' argument that the Southern District of Illinois is not a proper venue to issue subpoenas to prisons within its [sic] jurisdiction." (*Id.*, p. 4).

Rule 45's command is clear: "[a] subpoena must issue from the court where the action is pending." FED. R. CIV. P. 45(a)(2). The underlying action is currently pending in the Northern District of Illinois before Chief Judge Pallmeyer. *See Stewart*, Case No. 2:23-cv-50198. Thus, the Rule plainly requires that the subpoenas should have issued from the Northern District of Illinois. This Court is not persuaded that Stewart's reliance on objections to the subpoenas or arguments regarding the propriety of the subpoenas made by counsel for Defendants justifies Stewart's decision to obtain subpoenas issued by this District.[3] While this Court finds that the subpoenas were not properly issued from the Northern District of Illinois, however, Hempen and Martin have properly brought their Motion to Quash before this Court, as this Court is the "court for the district where compliance is required" in accordance with Rule 45(d)(3)(A). *See Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) ("Therefore, the court in which compliance is required under Rule 45(c) is the court in the district within 100 miles of where the subpoenaed person resides, is employed, or regularly transacts business in person. Consequently, this Court has jurisdiction to rule on the Motion to Quash."); *see also Dou v. Carillon Tower/Chicago LP*, No. 18 CV 7865, 2020 WL 5502345, at *1–2 (N.D. Ill. Sept. 11, 2020); *JMC Rest. Holdings, LLC v. Pevida*, No. 14 CIV. 6157 WFK VMS,

---

[3] This is due, in part, to the fact this Court does not find counsel for Defendants' purported position regarding the subpoenas, as described by Plaintiff, was inherently flawed: as discussed below, it is true that the subpoenas violate the 100-mile rule regarding compliance and future enforcement of the subpoenas would properly be sought in this District rather than the Northern District of Illinois. (*See* Doc. 9, p. 3).

2015 WL 2240492, at *3 (E.D.N.Y. May 12, 2015). As a result, despite the procedural defect of the subpoenas not having issued from the proper court, this Court has jurisdiction to adjudicate the present Motion to Quash brough by Hempen and Martin.

As to their second argument, Respondents argue that the subpoenas violate Rule 45(c) because they direct Respondents to comply by producing the requested documents to Stewart's attorney's law firm located in Chicago, Illinois, which is some 292 miles from Big Muddy and 272 miles from Centralia. (Doc. 4, p. 8). This Court agrees. Stewart argues in her Response that Respondents have not shown any case law to contradict the well-known 100-mile rule in Rule 45(c)(2) that a Court lacks jurisdiction to enforce a subpoena for documents if the entity subpoenaed does business greater than 100 miles away. (Doc. 9, p. 4). She argues that because Centralia and Big Muddy prisons are more than 100 miles from the Northern District of Illinois, the Rules dictate that "jurisdiction passes to the federal court nearest to the entities subpoenaed." (*Id.*). Stewart suggests that, in the alternative, the Court modify the subpoenas such that, to the extent they violate Rule 45, the deficiencies are cured. (*Id.*).

The Central District of Illinois faced a factually similar situation to the case at hand in *Raap v. Brier & Thorn, Inc. See* 2017 WL 2462823, at *2 (C.D. Ill. July 7, 2017). In *Raap*, plaintiff, whose case originated from the Eastern District of Wisconsin, served a subpoena (issued from the Eastern District of Wisconsin) on the Bank of Springfield, a third party located in Springfield, Illinois. *Id.*, at *1. The Bank of Springfield filed a Motion to Quash in the Central District of Illinois, requesting

the court quash the subpoena because the subpoena requires disclosure of documents more than 100 miles from where the Bank of Springfield is located and regularly transacts business. *Id.*, at *1–2. The Bank of Springfield did not regularly transact business within 100 miles of Milwaukee, Wisconsin, where the underlying litigation was pending, nor was it located within 100 miles of Madison, Wisconsin, where compliance was commanded by subpoena. *Id.*, at *1. The court held that the proper place of compliance as required by Rule 45(c) was a location within 100 miles of where Bank of Springfield is located or regularly transacts business. *Id.* Because the subpoena compelled compliance in Madison, Wisconsin, which was not within 100 miles of where the Bank of Springfield was located or transacted business, the court found that the subpoena must be quashed or modified. *Id.*

The same reasoning allows this Court to reach the same conclusion as the *Raap* court. The subpoenas issued to Respondents Hempen of Centralia Correctional Center and Martin of Big Muddy River Correctional Center direct Respondents to comply by producing documents to counsel for Plaintiff at their office, which is located in Chicago. (*See* Doc. 4). Both Centralia Correctional Center and Big Muddy River Correctional Center are not within 100 miles of Chicago. Because the place of compliance is not within 100 miles of where these two prisons are located and regularly transact business, which violates Rule 45(c)(2), the subpoenas must either be quashed or modified in accordance with Rule 45(d)(3)(A). *See Raap*, 2017 WL 2462823, at *3; *see also Dou*, 2020 WL 5502345, at *2; *Black v. Wrigley*, No. 18-CV-2367 GPC-BGS, 2019 WL 1877070, at *5 (S.D. Cal. Apr. 26, 2019).

Stewart suggests this Court modify the subpoenas such that Hempen and Martin may email the responsive information sought by the subpoenas to counsel for Stewart. (*See* Doc. 9, p. 6). This suggested modification defeats the purpose of Rule 45(c)(2)'s 100-mile rule requirement. While Rule 45 leaves room for voluntary compromise around the 100-mile rule, it lacks an exception to the rule with respect to sending information by email or other electronic means. *See Dou*, 2020 WL 5502345, at *2 ("Given the ubiquity of email in modern communication, to create an exception under which documents that can be produced via email are not subject to the rule's geographical limitations would entirely swallow the '100-mile rule' set forth within Rule 45."). While previous district court interpretations of Rule 45 may have allowed for production of documents by email as a way around Rule 45(c)(2)'s 100-mile rule, *see e.g. U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 19–20 (D. Me. 2010), *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009), the Rule has since been amended as of 2013, and district courts have interpreted that without such exception in the rule, to permit electronic production to a location not within 100 miles of where the subpoenaed person or entity is located would frustrate the intention of the Rule. *See Dou*, 2020 WL 5502345, at *2 (citing FED. R. CIV. P. 45 advisory committee's note to 2013 amendment). Thus, having Hempen and Martin send the information requested by email is not an appropriate modification.

Stewart also suggests that this Court modify the subpoenas such that her counsel would personally pick up the responsive documents directly from Centralia Correctional Center and Big Muddy River Correctional Center. (*See* Doc. 9, p. 6). This Court finds, however, that quashing the subpoenas at issue, as opposed to modifying

them, is warranted here because the subpoenas also impose undue burden on Respondents Hempen and Martin. *See Raap*, 2017 WL 2462823, at *4; FED. R. CIV. P. 45(d)(3)(A)(iv).

"When determining whether a subpoena subjects a person to undue burden, the Court balances the burden of compliance against the benefits of the requested production." *Id.* (citing *Elliott v. Superior Pool Prods., LLC*, No. 15–cv–1126, 2015 WL 5853189, at *2 (C.D. Ill. Oct. 7, 2015). "Relevant factors include whether the recipient of the subpoena is a nonparty, the relevance of the discovery sought, the subpoenaing party's need for the discovery, the breadth of the request, and the burden on the subpoenaed party." *Id.* (citing *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015); *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009)). Hempen and Martin argue that the subpoenas at issue pose an undue burden on them because they are not parties to the Northern District of Illinois litigation; the evidence sought is not relevant to any claims or defenses in that case; and the evidence sought is overly broad in scope and time. (*See* Doc. 4, pp. 9−10). This Court agrees.

Stewart argues that the subpoenas seek relevant information related to the transfer of Stewart from Centralia Correctional Center to Big Muddy River Correctional Center during the pendency of the underlying litigation on or around January 2025. (*See* Doc. 9, pp. 1−2). She states that on December 18, 2024, she successfully moved for sanctions in the underlying litigation and her counsel was awarded attorneys' fees. (*See id.*, p. 2); *Stewart*, Case No. 23-cv-50198 (Doc. 84). Stewart alleges that, suspiciously, within 30 days of her winning the Motion for

Sanctions, she was transferred to Big Muddy River Correctional Center, which, Stewart argues, is "known throughout IDOC for housing most of the violent sexual offenders within the Illinois Department of Corrections." (*See* Doc. 9, p. 2). The purported reason for the transfer offered by Centralia Correctional Center and/or Big Muddy River Correctional Center was that Stewart was accused of making false reports of sexual harassment against other inmates on her wing. (*See id.*). Stewart maintains this is untrue and was done instead to retaliate against her. (*See id.*, p. 8).

Shortly after arriving at Big Muddy, Stewart continues, she was approached in a hallway by another inmate while walking to a medical appointment who "told the Plaintiff that he was directed by 'LA' [a nickname of the inmate who allegedly sexually assaulted Plaintiff at Dixon Correctional Center, the subject of the underlying Northern District of Illinois litigation] to deliver a message to Plaintiff: if Plaintiff testified at her criminal trial scheduled for April 1, 2025, she would die." (*Id.*). The subpoena to Centralia Correctional Center requests, in essence, documents related to any Prison Rape Elimination Act investigations done for Plaintiff on or around December 2024, and information related to Stewart's transfer to Big Muddy River Correctional Center and the justification for doing so. (*See* Doc. 4, Ex. A, p. 4). The subpoena to Big Muddy River Correctional Center requests, to summarize, documents related to inmates meeting Stewart's description of the inmate who purportedly threatened her while she was walking to the medical center at Big Muddy River Correctional Center and documents and footage that shows her movement history for the month of January 2025. (*See id.*, Ex. A, p. 9).

Stewart argues that the main purpose of her subpoena to Big Muddy River Correctional Center is to ascertain discoverable information regarding the identity of the individual who purportedly delivered this threat. (*Id.*, p. 7). "Not only does this inmate have valuable information related to Plaintiff's civil case, but Plaintiff seeks to identify this threat to her personal safety and well-being that could prevent her from testifying in both her criminal and civil rights cases." (*Id.*). Stewart argues that the requested movement history, video footage, and listed information of the race and age of inmates housed at Big Muddy River Correctional Center on a given day are all narrow in scope for ascertaining the individual's identity. (*Id.*). Stewart argues that the information sought from Centralia Correctional Center is discoverable because the subpoena seeks to "ascertain whether the reason for Plaintiff's transfer was retaliation for Plaintiff's litigation of her civil rights case," as her and her counsel suspect that it was. (*Id.*, p. 8). Stewart argues this information is needed "for future reference to Motions in *Limine* at the trial of prior alleged bad acts alleged to the Plaintiff" and for purposes of damages, as "Plaintiff's PTSD and mental wellbeing have been significantly exacerbated by this transfer." (*Id.*, pp. 8−9).

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Simply put, this Court finds that the information sought by Stewart's subpoenas does not fall within the scope of discoverable information. The documents and information sought are entirely irrelevant and unrelated to the claims and defenses at issue in the underlying litigation pending before Chief Judge Pallmeyer in the Northern District of Illinois. That suit involves one claim of failure to protect

in violation of Stewart's Eighth and Fourteenth Amendment rights against Johnson, Nolan, Stevens, Clark, Rick, and Suzner; and one claim of deliberate indifference to Stewart's serious medical needs in violation of Stewart's Eighth and Fourteenth Amendment against Suzner. (Doc. 2); *Stewart*, Case No. 2:23-cv-50198 (Doc. 5). The claims stem from a violent sexual assault attack on Stewart by another inmate on or around April 2021 at Dixon Correctional Center. Defendants are alleged to have failed to protect her from the attack, and, following the attack, Defendant Suzner is alleged to have been deliberately indifferent to Stewart's medical needs. (Doc. 2); *Stewart*, Case No. 2:23-cv-50198 (Doc. 5).

This Court recognizes that the allegations at present, including an alleged retaliatory transfer of prison facilities due to Stewart's litigation efforts and an alleged threat received by another inmate are serious concerns; nevertheless, they are collateral issues to the underlying litigation that are much too attenuated for this Court to find they are relevant. The events alleged here occurred in December 2024 and January 2025, more than three years after her alleged attack. They took place at two entirely separate prison facilities than from Dixon Correctional Center, where the 2021 attack occurred. The information sought regarding her transfer and the threat from another inmate does not seek to shed light on any of the claims or defenses at issue regarding her Eighth Amendment claims of Defendants' failure to protect her and Defendant Suzner's deliberate indifference to her serious medical needs. The events in question here do not involve an overlapping set of key players common to both the 2021 attack and the events occurring at Centralia Correctional Center or Big Muddy River Correctional Center, nor does Plaintiff provide a

persuasive reason as to why discovery as to these events bears on the merits of her underlying claims. Stewart has failed to provide a persuasive reason as to why the issue of whether the actors at Centralia Correctional Center have presented truthful justification for her transfer of prison facilities bears on the merits of her underlying claims. Even if done for a retaliatory motive related to a motion for sanctions, this Court is not persuaded that these events relate to her Eighth and Fourteenth Amendment claims stemming from events which took place at Dixon Correctional Center in 2021. There is no conspiracy alleged in the underlying litigation. Moreover, while alleged threats to a trial witness may be of concern to the criminal case involving Stewart's attacker, seeking to subpoena information from Big Muddy River Correctional Center for her Northern District of Illinois case is not an appropriate route for discovering such information. In addition, Stewart presents no evidence to support the conclusory claim the inmate at Big Muddy River Correctional Center who purportedly threatened Plaintiff has relevant information to the 2021 attack. (*See* Doc. 9, p. 7).

    In sum, this Court finds that because the subpoenas issued to Respondents Hempen and Martin require compliance beyond the geographical limit of Rule 45(c) and are unduly burdensome, they should be quashed in their entireties in accordance with Rule 45(d)(3). While Stewart's proposed suggestion of requiring Hempen and Martin to produce the documents at their respective prison facilities could indeed cure the defects by requiring compliance within 100 miles of where Centralia Correctional Center and Big Muddy River Correctional Center are located, this Court finds that modification of the subpoenas is still not warranted in light of the fact they

seek irrelevant information from third parties to the underlying litigation, and thus pose undue burden. *See Raap*, 2017 WL 2462823, at *4.

Finally, this Court briefly addresses Stewart's request that this Court hear oral argument on this matter. (Doc. 10). Per Southern District of Illinois Local Rule 7.1(c), any motion before this Court may be determined upon the pleadings and the motion papers without oral argument. This Court believes that oral argument regarding this matter does not promote the just, speedy, and inexpensive determination of this matter in accordance with Federal Rule of Civil Procedure 1. Accordingly, upon a finding that oral argument in this matter is not warranted and considering the thorough discussion of the issues presented above, the request for oral argument is denied.

## CONCLUSION

For the reasons set forth above, the Motion to Quash Subpoenas Issued on May 21, 2025 filed by Respondents Jenna P. Martin and Troy Hempen (Doc. 4) is **GRANTED**. The Motion Seeking Oral Argument on Her Response to Defendant's Motion to Quash Plaintiff's Subpoenas (Doc. 10) filed by Plaintiff Bryan Stewart is **DENIED**.

**IT IS SO ORDERED.**

**DATED: July 23, 2025**

                                          *s/ Stephen P. McGlynn*
                                          **STEPHEN P. McGLYNN**
                                          **U.S. District Judge**